SUCCESSION OF IGARAVÍDEZ ET AL., PLAINTIFFS AND APPELLANTS, *v.* RUBERT BROTHERS ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan, Section 2, in An Action for the Restitution of Property.

No. 1024.—Decided December 8, 1915.

INTEREST IN SUBJECT-MATTER—PARTY PLAINTIFF.—A person who has no interest in the subject-matter of an action has no right to go into court as plaintiff and attack the deeds or proceedings relating thereto.

TUTOR—ADMINISTRATOR—EXECUTION.—The fact that a person is the tutor of minors whose property is being sold or affected under an execution process does not prevent him from being appointed administrator of the property, for as such he can better safeguard the interests of his wards.

FRAUD—PRESUMPTION.—Fraud is not lightly presumed and when charged it must be clearly proven.

ID.—THIRD PERSON—PRESUMPTION.—In this case a brother of the members of the firm of Rubert Brothers was the attorney in fact of José Gallart when he sold the property in litigation to the said firm. Later the said attorney in fact acquired an interest in the said firm of Rubert Brothers. *Held:* The fact that a brother of the members of the defendant firm was attorney in fact of their vendor at the time of the purchase and later acquired an interest in said firm does not justify the assumption that his knowledge of the antecedent facts is chargeable to his said brothers to the extent of defeating their right to be considered as third persons, and if the alleged irregularities and illegalities in the foreclosure sale are alone involved, it is doubtful that knowledge of the same by the vendees themselves would defeat such right.

PRESCRIPTION—INTERRUPTION.—Interruption of prescription, especially if by suit, would have to be of the same character as the present suit.

ESTOPPEL—LACHES.—The plaintiffs are estopped from attacking the foreclosure proceedings or the mortgage by their acts of accepting settlements and transfers, and, having received the benefit of the same without making any effort to attack their validity, they are guilty of laches.

Judicial Notice.—Judicial notice cannot be taken of a judgment of an appellate court unless the record shows that said judgment was submitted directly to the trial court.

Foreclosure—Collateral Attack.—A collateral attack upon foreclosure proceedings must be directed to the real defenses of the mortgagors and not to the technical defects of the sale.

Mortgage—Joint Owner—Married Woman.—A maried woman who is a joint owner in a plantation has the right to mortgage her interest to secure debts, contracted for the benefit of the property. The Law of Toro voided any surety given by a woman to secure the debts of her husband, but did not void an obligation contracted by a woman as one of the principal debtors.

Joint Deed—Heirs.—Even if the Law of Toro makes void a joint deed of man and wife, the only person who could properly take advantage of such invalidity would be the heirs of the wife.

Instrumental Witnesses—Contemporary Practice.—At the time of the creation of the mortgage the courts evidently tolerated the lack of signatures of instrumental witnesses and that contemporary practice must be respected.

Action in Rem—Personal Action—Service.—There being nothing in the record to show that the action, although involving real property and to that extent *in rem*, was anything more than a personal action so far as one of the defendants was concerned, personal service upon said defendant was necessary.

The facts are stated in the opinion.

*Messrs. Rafael López Landrón, Enrique Rincón* and *José R. F. Savage* for the appellants.

*Messrs. Alvarez Nava & Domínguez* and *Francisco de la Torre* for the appellees.

Mr. Justice Wolf delivered the opinion of the court.

This is a case in which little or nothing was done in the court below to simplify the issues. For one reason or another not fully explained, the appellants were allowed to include in the complaint a number of irrelevant and impertinent matters, some of them having no apparent relation to the alleged causes of action. The fundamental theory of the complaint was that by reason of the acts of various people, and especially of José Gallart and others who intervened in the execution of a certain mortgage, the Succession of Leonardo Igaravídez was deprived of certain rights of property. It is further, more or less consistently, the theory of the complaint that in order to restore the Succession of Leonardo Igaravídez to its rights, a certain execution sale and the mortgage on which it was founded must be declared absolutely null and

void and, if necessary, inexistent.   To the Succession of Leonardo Igaravídez the Successions of Carmen Landrón and of Manuel López were joined, apparently to aid in destroying the citadel erected by the common enemy, José Gallart, in which destruction the two last-named successions would hope to derive some benefit.   If the Succession of Manuel López and the Succession of Carmen Landrón never parted with any of their primitive rights, barring questions of prescription, they could still perhaps have sued Rubert Brothers for a partition of property.   This complaint, however, is in no sense a partition suit, the rights of the defendants to any part of the property being vigorously contested and only vaguely recognized when the Succession of Manuel López, the brothers of López Landrón, claim a legal mortgage.   Even then, not a single one of the alleged thirty-six causes of action claims the said legal mortgage as its basis of action.   The complaint, in form, is a rambling narrative to which are appended what ordinarily would be called prayers.   The appellants style them "causes of action" and discuss them *seriatim* in their brief.   There can be no consistent theory of the complaint other than an attempt to destroy the title or titles which the defendants claim by reason of the mortgage and the execution sale thereunder.   Strength is added to this theory by various matters in the record and especially by the fact that in the assailed mortgage Leonardo Igaravídez and Carmen Landrón appear to be mortgaging the whole property and not their separate interests, and that the mortgage proceeding was begun against the whole property.   Of course, under sections 406 and 1758 of the Civil Code, the mortgage only really applied to their individual interests.

The appellants have filed a brief of some 392 typewritten pages, and it has been with the idea of giving the innumerable claims serious consideration that the court has postponed the decision of this case.   The judge of the court below, the late Mr. Justice Gill, filed a very able opinion, with which, in its main aspects, we agree.   Here again the appel-

lants, in attacking the reasoning of the court below, allege a great number of errors when in point of fact only one could be alleged, namely, the failure of the court to render judgment for the appellants, or, at least, some of them, in their widely ranging claims of fraud, illegalities and nullities.

The judge of the court below, although criticised by the appellants, says that the subject-matter of this suit was known as the plantation San Vicente of Vega Baja. There were other lots included in the litigation, but the whole plantation was dedicated to the cultivation and grinding of cane. The property was known and still is known as San Vicente, although the title of it was changed later to Central San Vicente.

To take this shorthand way of speaking of the matter, the plantation San Vicente was owned by Jacinto López Martínez, who died in 1863. In the division of his estate the plantation was allotted to his son, Manuel Antonio López Martínez, and three of the latter's sisters. During the first part of 1864 Manuel bought the interests in San Vicente of two of his sisters and obtained a lease from the third. Manuel died in November, 1865, leaving a widow, Carmen Landrón, and three children. Carmen Landrón contributed nothing to the conjugal partnership; she was allotted 11,000 *pesos,* more or less, as her part of the ganancial property and 117,000 *pesos* with which to pay the debts of Manuel. All the remainder of the property, about 88,000 *pesos,* was allotted to the three children, the testamentary heirs of Manuel.

In 1866 Manuel's sister Teresa de Jesús López Martínez, who was the only owner with him, sold her interest to Reverend Antonio García and later he sold it to Leonardo Igaravídez, who paid him about 40,000 *pesos* in cash and gave him a mortgage for the balance. Thus, in November, 1866, the joint owners of San Vicente were the three López Landrón children, with an interest of 88,000 *pesos* among them, the widow, Carmen Landrón, with an interest of 11,000 *pesos* as her ganancial property and 117,000 *pesos* with which to pay the debts of her deceased husband, and Leonardo Igaravídez,

with an interest of 98,000 *pesos,* more or less. Leonardo was then a widower with a son and two daughters and it appears that the son died a minor. One of the daughters died later and the other is the Succession of Igaravídez y Santana.

In November, 1866, Leonardo Igaravídez married Carmen Landrón and of that marriage there were born six children, who composed the Succession of Igaravídez Landrón. The three successions, that of López Landrón, of Igaravídez Santana and of Igaravídez Landrón, are the plaintiffs in this suit. At the time of the marriage the said plantation was encumbered by the said mortgage in favor of Reverend Antonio García and by two mortgages in favor of the two sisters of Manuel, to secure the purchase price of their respective interests.

The court below points out that the liens which existed on the plantation San Vicente in 1866 were paid, or, at least, in part. He also points out that none of the plaintiffs in this suit came before the court in the character of heir of the sisters of Manuel or as heir of the Reverend García, nor did the said plaintiffs appear in representation of any other creditor having a right of action against the owners of the plantation in 1866 or at any other subsequent date. Considerable was said in the complaint about various existing liens and the rights of various creditors, but the object of these various allegations, as we understand them, was to show that the acts of Gallart and others were bound to be illegal by reason of these various existing liens and alleged credits. The court emphasized the fact that the complainants represent no creditor. Indeed, throughout the complaint there are various attacks made on the recorded titles of the defendants by reason of facts or claims which other people might have set up, but in which none of the complainants had any interest. We also think that this failure to understand that a person who attacks a deed or a proceeding as null must have an interest, accounts for a number of erroneous ideas of the appellants. From the time of the marriage Leonardo man-

aged the plantation in representation of his own interests and of the interests of his wife and her three children by her first marriage, the said children being then infants.

On October 8, 1869, Leonardo Igaravídez and Carmen Landrón executed a mortgage in San Juan for 100,000 *pesos* in favor of Sturges & Company and the deed recited that the money was borrowed and had been used in the cultivation, sustaining and work of the *hacienda* San Vicente. We see nothing in the record which leads us to doubt that these recitals were substantially correct, and neither did the court below.

On August 28, 1875, in the city of San Juan and before the same notary, the said Sturges & Company assigned to Juan Forgas the said mortgage credit and the said Igaravídez and the said Carmen Landrón were made parties to the same deed authorizing the assignment and ratifying or confirming the mortgage.

Leonardo failed in 1879 and the bankruptcy proceedings continued until 1887, when Leonardo was again made manager of the plantation.

The various creditors, with the exception of Juan Forgas, the owner of the mortgage, had made an agreement with Igaravídez by which he was allowed to proceed with the administration.

Leonardo Igaravídez died in 1888, his wife predeceasing him, and he had no opportunity to pay his creditors; nor was the bankrupcty against him wound up in his lifetime.

On April 9, 1888, Julián Blanco, authorized by Igaravídez by power of attorney to make a will for him, executed such will, making heirs of his children by both marriages, who accepted the inheritance with the benefit of inventory. Despite the mortgage being overdue, the mortgage creditor, for various reasons, delayed the foreclosure of the mortgage. However, on June 22, 1888, through a duly named procurator and an attorney, a proceeding to foreclose the mortgage was begun in the name of José Gallart y Forgas, he being the heir

and successor of his uncle, Juan Forgas. The mortgage proceeding, which is a special one under the law of Spain, was begun before the judge of first instance at San Juan. The proceeding was for 74,000 *pesos,* more or less, being a balance due on the mortgage, and it was directed against the property of the Succession of Leonardo Igaravídez and, in particular, against the *hacienda* San Vicente. The mortgage creditor, while proceeding against the property of Leonardo, reserved unto himself all rights that he might have against the Succession of Carmen Landrón by virtue of the same mortgage credit. Accompanying the complaint in this proceeding, the mortgage and its ratification were filed, as well as the pertinent clause of the will of Forgas making Gallart his heir and a certificate of the Registrar of Property of Ponce showing the death of Juan Forgas.

On July 6, 1888, the judge of first instance denied the execution because of the technical defect that the registrar had no power to certify to the death of a person. When the mortgage creditor asked for a reconsideration the judge not only insisted on this alleged defect, but also denied the execution on the ground that the mortgage created by Leonardo Igaravídez and Carmen was of the kind prohibited by the Law of Toro, inasmuch as the wife appeared as guarantor for the debts of the husband. This order of the court of first instance was appealed to the *Audiencia Territorial* which in part affirmed the order of the court of first instance. The nature, the meaning and exactly what the *Audiencia Territorial* decided have been perhaps the principal grounds of contention in this case and we shall give a more detailed account of this proceeding hereafter.

The appellees maintain that the *Audiencia* only affirmed the order of the court of first instance for the alleged technical defect and it was evidently under this theory that the mortgage creditor went on with the foreclosure proceeding. The judge of the court of first instance, in view of corrected documents, proceeded to order the execution of the mortgage,

reducing somewhat the amount of the claim as the time for executing one of the instalments of debt had expired.

The appellants attack the last-named action of the court of first instance as fraudulent, and they also allege various other frauds, illegalities and nullities in the execution of the mortgage proceeding, to which we shall refer hereafter.

At this time San Vicente, then known as Central San Vicente, was being administered by Julián E. Blanco, who was so named administrator by the creditors in the bankruptcy proceedings. He was at the same time curator or tutor of all or some of the children Igaravídez Landrón. For this reason and in order to avoid costs and delays the mortgage creditor also named the said Blanco as administrator of the property during the mortgage proceedings, every one having confidence in the capacity and honesty of the said Blanco. The appellants maintain that his position as tutor was inconsistent with his being the administrator of the property. We find nothing inconsistent in the tutor of a succession whose property is being sold or affected under an execution process in taking charge of said property. He could better safeguard the interests of his wards. His acts are also attacked as fraudulent, there being an unsubstantiated charge that he was in league with Gallart against the interests of his wards.

When Igaravídez and his wife, Carmen Landrón, made the mortgage it was a mortgage for all San Vicente. In point of fact, they did not own it all as the López Landrón brothers were owners in common with them.

In 1885, while the bankruptcy proceedings were pending, the judge of first instance ordered that the bankruptcy should pay to the brothers López Landrón the sum of 1,000 *pesos* as their proportion of the rents and products in the *hacienda*. The said judge realized the impossibility of separately administering the proportion that belonged to Igaravídez, probably by reason of the fact that the central was a going concern, and under a similar theory Gallart pursued his mortgage proceeding against the whole property, but during the pen-

.dency of the proceeding or at subsequent times he made either settlements with or transfers to the 'López Landróns and the Igaravídez Landróns. The validity, completeness or sufficiency of all these later acts are attacked by the complainants and appellants in this case.

Various segregations and changes in the property were made, and finally on May 31, 1894, a deed describing all the proceedings in the mortgage foreclosure was made to Gallart, the mortgage creditor, and recorded in the registry of property on July 7, 1894. Gallart sold the aforesaid property to Juan and Guillermo Rubert on February 24, 1897. The appellants set up facts tending, they maintain, to show that Rubert Brothers were not third persons under the Mortgage Law by reason of the acts of Luis Rubert, one of the brothers of Juan and Guillermo Rubert. On December 12, 1902, Guillermo Rubert sold a share of his ownership in the Central San Vicente to his brother Luis. The respondents Rubert Brothers maintain that they have possessed the property since the date of their various acquisitions, peacefully and without interruption.

This action was originally begun on June 5, 1906, and an amended complaint was filed on February 18, 1909. The Succession of José Gallart was made a party to the complaint and service by publication was obtained, although the amended complaint was filed after such service. A default was entered by the secretary and the complainants sought to obtain a judgment by default against the said Succession of Gallart and had their day in court for that purpose. A judgment was finally rendered dismissing the complaint and the complainants appealed, but the Succession of José Gallart was never notified of the appeal. The appellees, at various times, have moved to dismiss the appeal on the ground that the Succession of José Gallart was a necessary party and therefore that notice should have been given it. They have insisted that the Succession of José Gallart was a necessary party, not only because the complainants have made it so by

various acts and writings appearing in the record, but also because in the transfer of the property from José Gallart to Rubert Brothers the deed contained a warranty of title.

There have been various charges of fraud in this case. The charges of fraud against the judge of the court of first instance, who finally ordered the execution sale, are altogether unverified. With regard to the charge of fraud against Julián Blanco y Sosa, we desire to quote, as did the court below, the power of attorney executed by Leonardo Igaravídez, by which he authorized the former to make his will:

"Having unlimited confidence in his friend and general attorney in fact, Julián Eusebio Blanco y Sosa, who has full knowledge of all his business and affairs, he has decided to confer upon him sufficient authority to make his will and for this purpose he executes this power in the manner which may be most proper. He gives and confers upon the said Julián Eusebio Blanco y Sosa, of this same vicinage, the most complete, ample and sufficient power required by law to draw up and execute his will within or beyond the time prescribed by law and under the instructions which he has given him and will give him in the future * * *.

"He desires to make it known expressly that besides being his general attorney in fact, Julián Eusebio Blanco y Sosa has had charge of all of his judicial affairs for many years and up to the present time Blanco has not charged, nor has the undersigned paid, anything for his faithful and valuable services. The undersigned has requested Blanco to inform him of the value of his services or state the amount which he should be paid for such services at various times, but has not been able to obtain from Blanco any other reply than that the matter be left for a more convenient occasion. Therefore, considering said compensation a debt of conscience, he charges very particularly both his executors and heirs to exact from Blanco a statement of the value of all his services and that the amount be paid with all punctuality and preference, considering the nature and importance of said services."

Then Mr. Justice Gill, in his opinion, goes on to state:

"Such was the character of Blanco in 1888 in the opinion of Leonardo Igaravídez, and it has not been shown in this suit that

the opinion of Leonardo Igaravídez was erroneous or that later the character of Blanco changed for the worse.

"Other persons including judges, lawyers and solicitors are accused of fraud also. This court has no subjective experience in judiciary corruption, but it appears to be extraordinary that if the representatives of Gallart had bribed the Courts of First Instance of San Juan a final judgment could not have been secured in less than seven years. In other words, if a judge sells himself he usually renders judgment quickly."

The appellants have charged fraud in the most reckless manner and have failed to prove it. We have several times had occasion to remark that fraud is not lightly presumed and must be clearly proven. *Carrero* v. *Calzada,* 13 P. R. R. 340; *Lamas et al.* v. *Roig et al.,* 15 P. R. R. 481; *Cruz* v. *López,* 17 P. R. R. 40. Counsel have either assumed fraud, asserted it, or have expected this court to infer it from certain alleged nullities or illegalities.

The defendants and appellees before us are Rubert Brothers. Appellants maintain that appellees cannot be considered as third persons inasmuch as Luis Rubert was the attorney in fact of Gallart and had knowledge of all the antecedent facts, but the appellants have not shown us that such knowledge as Luis Rubert had could be charged to Rubert Brothers at the time the latter purchased of Gallart. It is true that Luis Rubert acquired an interest in the firm later and his close relationship to his brothers Juan and Guillermo Rubert might be considered a suspicious circumstance, but we cannot assume, without more proof, that any knowledge he had was chargeable to his said brothers. Furthermore, as we have said, appellants have pointed out to us no frauds. The conveyance from Gallart to Rubert Brothers is attacked in that Luis Rubert was the agent of Gallart. Without considering the other merits of this contention, the appellants have no legal interest whereby they may attack the conveyance. If the alleged irregularities and illegalities in the foreclosure sale are alone involved, we may doubt if a knowledge of them

would defeat a man's right to be considered a third person. We also doubt whether if the attorneys and proctors of Gallart were chargeable with notice of illegalities in the execution sale, such knowledge could be chargeable to Luis Rubert or to Gallart, both of whom were laymen presumably following and relying upon the advice of counsel. If being a third person could redound to the advantage of anybody in this case, we find nothing in the record which would prevent Rubert Brothers from enjoying that condition with regard to the lands that they acquired from Gallart.

The appellees maintain an acquisitive right of prescription, having been in possession of the properties, as they claim, for more than ten years, quietly and pacifically. Appellants maintain interruptions to such acquisitive title. We are not satisfied that such interruption really exists. Without entering into an elaborate discussion of a matter which is one of many raised in this suit, we may say that we think that the interruption, especially if it is by suit, would have to be of the same character as the present suit. So far as the Succession of Leonardo Igaravídez is concerned, we are more than dubious if a claim like the present unusual suit was ever made, judicially or extrajudicially, within the period of ten years.

However, with respect to the appellees' claim of being third persons, the appellants say that the registry could not validate void acts; and with respect to the claim of acquisitive prescription, they say that appellees had no just title. Each of these contentions is tantamount to saying that all the acts leading to the judicial sale and deeds on which the mortgage proceeding was founded were absolutely void. The question then arises as to which of the various successions in this case is in a position to make such a claim, but before considering that question we first want to examine the extraordinary claim of the Succession of López for an alleged legal mortgage.

This claim apparently is made in the brief as being the forty-first petition of the amended complaint. In their brief the appellants allege that there are thirty-six different causes of action, and likewise in the discussion of the motion to dismiss counsel say that they added a thirty-sixth cause of action to the original complaint. The amended complaint contains exactly thirty-six prayers, although in the brief of the appellants forty-six petitions are discussed. The last ten petitions include a reference to the alleged legal mortgage, but the facts of this legal mortgage are set up in Paragraph XIII of the said amended complaint. The theory seems to be (more being claimed in Paragraph XIII) that although the López Landrón brothers were paid a certain principal sum belonging to their inheritance, they were not paid the whole of it, and hence, as Leonardo Igaravídez had taken possession of all the property of the minors López Landrón, that Gallart, as the successor in interest of Igaravídez, would be responsible for this claim of interest. However, the López Landrón brothers were co-owners with Igaravídez and Carmen Landrón. All they claim that had been left of their inheritance from their father was by reason of such common ownership. We find nothing to justify in favor of the López succession the assumption of any mortgage on the part of Leonardo Igaravídez in this or any other regard. If the Succession of López Landrón was wrongfully deprived of anything that legally belonged to it, the theory of a legal mortgage would never, under the facts of this case, give rise to an action in their favor.

There is abundant proof in the record that the Succession of López Landrón made agreements with Gallart by which both their paternal and maternal inheritances were satisfied to them. The fact of such transfers is not seriously disputed, but the appellants, López Landrón, attempt to say that this transfer, compromise, or settlement was only a *modus vivendi* and concerned only a certain small portion of the property. Even if this were so, the López Landrón brothers,

then all of age, permitted Gallart to proceed with the execution and take hold of the property without seriously disputing the claim until it is done, more or less vaguely and indirectly, in this complaint. As we have seen, the theory of the complaint was not a partition of property, but an attempt to destroy an execution sale and thus to derive whatever benefit might accrue to appellants. But we think the truth of the matter was that when these transfers were made, the property, by reason of the bankruptcy and the execution proceedings, was probably worth very little and that the López Landrón brothers received their due proportional part. The appellants themselves, in other parts of their brief, maintain that the property was allowed to go to waste by reason of the bad administration of Blanco, and for this they have made a separate and distinct claim against the Succession of Gallart. We do not think that the Succession of López Landrón is in any position to attack the mortgage proceeding nor yet the mortgage itself; their acts, and they were of various kinds as the record shows, estopped them.

Similar considerations apply to the Succession of Leonardo Igaravídez regarding its maternal inheritance. Gallart made settlements with and transfers to it. It is true that some or all of them were minors at the time of the transfer, but they appear to have been duly represented, not only by tutor, but by their half-brother, Manuel López Landrón, as curator *ad litem*. The latter appears not only in certain original transfers made between the parties, but also in some later transfers by which Gallart acquired other parts of the *hacienda* San Vicente. Furthermore, there is every indication in the record that the said Succession of Leonardo Igaravídez Landrón received the benefit of these exchanges and remained in possession of them after they became of age, without making any attempt to attack the validity of the said exchanges. They are not offering to return anything in this suit. We think that not only to them but to the Succession of López Landrón the doctrine of laches would apply. We

have already discussed the fact that the charges of fraud against Blanco, the tutor, were not verified. It may or may not have some bearing on the case that the creditor, Gallart, did not attempt to proceed against the interests of Carmen Landrón although his mortgage covered her interest as well as the interest of Igaravídez. In any event, if the Succession of Igaravídez Landrón had made its claim in time, either the Succession of Gallart or Rubert Brothers might have had a standing to maintain that they were entitled to a set-off by reason of the contract made by Carmen and the unsatisfied part of the original mortgage debt.

We come then to the claim of the Succession of Igaravídez who, of all the appellants, are in the best position here to attack the mortgage proceeding and who are the real complainants. As pointed out by the judge of the court below, the foreclosure proceeding continued until 1895. During all that time Laura Igaravídez Santana was of age and one of the Igaravídez Landróns became of age shortly before 1888. The mortgage proceeding left an unsatisfied debt in favor of Gallart in the sum of 300,000 *pesos*. The estate of Igaravídez was insolvent and in the hands of an administrator. It would be very questionable under these circumstances whether it was not the creditors or the administrator of the creditors who would have had a right to proceed to annul the mortgage in this case. It is plain that the various credits far exceeded the value of the property and, as we have seen, the bankruptcy proceedings were never concluded.

We have deemed it advisable, nevertheless, to discuss the alleged execution proceedings which, the appellants maintain, were absolutely null and void. They insist that the court of first instance paid no heed to the judgment of the *Audiencia Territorial* affirming the judgment of the court of first instance and refusing the issuance of the execution. They further insist that the action of the *Audiencia* was to preserve in all its integrity the final order of the judge of first instance by which the execution was denied and, prin-

cipally, relating to the insufficiency of the deed or deeds from Leonardo Igaravídez and Carmen Landrón to the mortgage creditors.

In their brief appellees have attempted to draw to our attention the actual judgment of the *Audiencia Territorial* and ask that we should take judicial notice of the same. This we cannot do because it is not a part of the record and we have no knowledge that the said judgment was directly submitted to the trial court. The appellants presented an alleged copy of the judgment which, the appellees maintain, is more or less incomplete. On the other hand, there exists in the record a transcription of the writ ordering the execution, wherein it appears that the defects insisted upon by the *Audiencia* were cured by the mortgage creditors and that the only defects insisted upon by the *Audiencia* were the more technical ones to which we referred, the inference being that the *Audiencia* did not declare the mortgage invalid. Furthermore, Attorney Ramón Falcón, very cognizant of all the proceeding, called as a witness by the complainants and appellants, is allowed to state without objection that the defect in the complaint was reformed. Therefore, given the judgment of the court below, the presumption would be that the court decided the conflict in favor of the appellees, and there is even a stronger presumption that the court of first instance, whose judgment has never been directly attacked by cassation or otherwise, followed the judgment of the *Audiencia*. It is impossible to believe that the judge of the court of first instance deliberately ignored the mandate of the superior court, and as we have said, and as the court below has said, there is no proof of fraud.

There were various technical defects alleged with regard to the execution sale, but in this regard we agree with the court below that it is too late to attack that judgment now in an independent original suit. The decisions of the Supreme Court of Spain show that a collateral attack of the kind raised here must be directed to the real defenses of the

mortgage debtors and not to the technical defects of the execution sale. Judgments of the Supreme Court of Spain of December 14, 1891; January 20, 1897; April 11, 1902; December 31, 1902, and July 1, 1903. The very authorities cited by the appellants show no contrary theory.

One of the things that might have been attacked in an ordinary suit, barring the lapse of time, is the sufficiency of the mortgage deed. The principal plaint in the brief of the appellants and likewise in the prayers is the insufficiency of the mortgage by reason of its being a joint deed of man and wife, forbidden, as alleged, by Law LXI of Toro.

As also shown by the court below, the joint owners of San Vicente were Leonardo, Carmen and the López Landrón minors. Carmen was a joint owner of the plantation and, therefore, had a perfect right to mortgage her interests to secure debts contracted for the benefit of the plantation. The mortgage of 1869 itself states that Sturges & Company had furnished and advanced various sums of money which were to be and actually were expended in keeping up, improving, and cultivating the sugar plantation called San Vicente. We agree with the court below that after forty years the truth of that statement cannot be denied. Law LXI of Toro voids any surety given by a woman to secure the debts of her husband, but does not void an obligation contracted by a woman as one of the principal debtors. All of the parties have apparently overlooked what seems to us a fairly important matter in this regard, and that is that Juan Forgas purchased the mortgage of Sturges & Company and that he had a right to believe that the recitals in the deed were true. We have found no proof in the record of any contrary state of things.

In this connection there arises another matter of estoppel. This is a suit primarily by the Succession of Leonardo Igaravídez. Even if the Law of Toro makes void a joint deed of man and wife, the only persons who could properly take advantage of such invalidity would be the heirs of the wife. The heirs of Leonardo Igaravídez can take no step

that he could not have taken. The deed, under the decisions of this court, was not void as to Leonardo, and, furthermore, his heirs would be estopped from raising such a question. Similar considerations would apply to the claim of the void acts of Leonardo Igaravídez with respect to the machinery furnished by Cail & Company.

One of the other alleged illegalities of the mortgage is that it has no instrumental witnesses. There can be little doubt of what was the positive law in this regard, but it seems that the contemporary practice made the provision of law practically a dead letter. Furthermore, the judgment of the court below points out that if this lack of the signatures of instrumental witnesses were to prevail, the whole suit must fail because some of the original deeds to the Succession of López themselves lacked instrumental witnesses. The courts at the time evidently tolerated the lack of the signatures of instrumental witnesses and that contemporary construction must be respected.

In the mass of untenable claims presented by the appellants we may have overlooked some which appellants have alleged with some degree of plausibility, but we are satisfied under the issues that there is no claim of any of the appellants which has not been put to rest by time or by the direct acts or omissions of the parties or of their predecessors in interest.

With one of the motions to dismiss, a partial copy of the original complaint was presented and therein it appears that it contained thirty-five prayers. The appellants say that the thirty-sixth prayer was added to the amended complaint and that this addition made a material change in the complaint. The thirty-sixth prayer is as follows:

"That in the summary mortgage proceedings instituted by José Gallart against the Succession of Leonardo Igaravídez a fraud has been committed against the persons composing the Succession of Carmen Landrón Córdova and of Manuel Antonio López Martínez, the

said foreclosure proceeding being further illegal on 'this account as it orders that it be declared null and void so far as it concerns the plaintiffs individually, with costs.''

Now, this thirty-sixth prayer shows that the theory of the complaint still called for the annulment of the mortgage proceeding and the mortgage on which it was founded, and if the Succession of Igaravídez Landrón and the Succession of Manuel López were entitled to any benefit, they would have obtained it from the court by the mere fact of the averments of the complaint and the further fact that they were parties to the suit. By this thirty-sixth prayer we think no material change was made by the amended complaint. Then too; everybody, the court below and the parties, proceeded and acted as if the Succession of Gallart was duly before it. This clearly appears in many ways in the record.

The introduction to the complaint is as follows:

"Now appear through counsel Rafael López Landrón the plaintiffs herein, Laura Igaravídez in her own right and as sole and universal heir of her sister Hortensia Igaravídez Santana, Leonardo R. Igaravídez Landrón, surgeon-physician and resident of Coamo, P. R., Guillermo Igaravídez, attorney-at-law and resident of Málaga, Spain, Enrique Igaravídez Landrón, property holder and resident of Vega Baja, P. R., Carmen Igaravídez Landrón, Sister of Charity and resident of Guanabacoa, Republic of Cuba, Milagro Igaravídez Landrón, Sister of Charity and resident of Granada, Spain, and Mer-. cedes Igaravídez Landrón, property holder and resident of Peñuelas, P. R., accompanied by her lawful husband, Luis Alvarado Santiago, all being of age, the Succession of Carmen Landrón Córdova and the Succession of Manuel Antonio Martínez, known and admitted in the record as joined, also plaintiffs, and file their amended complaint against the firm of Rubert Brothers, composed of Luis, Guillermo and Juan Rubert y Catala, and against these persons individually, as well as against the unknown Succession of José Gallart y Forgas, each of said plaintiffs making the following allegations:"

From the foregoing it appears that the theory of the original complaint was a suit by the Succession of Igaravídez to destroy the mortgage and the mortgage proceeding, and

we think that the amended complaint introduced no substantial variation.

In the court below the appellants sought service by publication against Gallart. After they filed their amended complaint, an answer thereto was filed and a trial was had. At this trial the appellants spent several days in proving their case against the Succession of Gallart and introduced much documentary proof. In point of fact, by the consent of the parties the same documentary proof was admitted in the trial subsequently had against Rubert Brothers; in other words, the appellants were insisting in the trial court on their right to a judgment against Gallart by reason of the default entry theretofore made. If the case were reversed, the complainants could go on against the Succession of Gallart in the same manner as if no amended complaint had been filed, because the amended complaint introduced no new facts and asked no relief that could not have been likewise obtained under the original complaint.

When the original motion to dismiss this appeal was filed, the appellants insisted that they had intentionally not notified the Succession of Gallart of the appeal because they were already in default and had no further right to be heard in court. Appellants, however, now maintain that by reason of the introduction of the amended complaint, which in point of fact was never served by publication or otherwise on the Succession of Gallart, the Succession of Gallart is not a necessary party to the appeal, and the cases of *McGarry* v. *Pedrorena*, 58 Cal. 91; *Thompson* v. *Johnson*, 60 Cal. 292, and *Reinhart* v. *Lugo*, 86 Cal. 395, are cited to the effect that the filing of an amended complaint opens a default. But these cases show that the amendment must be one of substance and this distinction is emphasized in the case of *Cole* v. *Roebling Construction Co.*, 156 Cal. 446, 105 Pac. 257. In the case of *Thompson* v. *Johnson*, moreover, it was a defendant who was attacking the judgment of the court below for failure to serve another defendant. Appellants also rely on the case

of *Clarke* v. *Mohr,* 125 Cal. 540. That case decides that a notice of appeal from a judgment is not required to be served upon defendants who do not appear from the record to have been served with summons or to have appeared in the action. The theory of that case is that the defendants were never before the trial court. The case of *Clarke* v. *Mohr,* by its own language, shows that the amendment must be material and the court must have failed to obtain jurisdiction. This distinction is brought out more clearly in the case of *Johnson* v. *Phoenix Ins. Co.,* 146 Cal. 576–577. The court said that what had been decided in the case of *Clarke* v. *Mohr* could have no application to a case where the judgment has been given in favor of one who is shown by the record to have been in fact a party to the action. ,

There can be no doubt in this case that the Succession of Gallart was made a party if the service by publication was availing, which nobody questions. But did the court below acquire jurisdiction over the Succession of Gallart by the publication? This is more than dubious as there is nothing in the record to show that the action, although involving real property and to that extent *in rem,* was anything more than a personal action so far as the Succession of Gallart was concerned. If the action be regarded as in its nature solely reivindicatory, then the Succession of Gallart was entirely unnecessary as Rubert Brothers were in possession of the land. If, on the other hand, the action, as it more properly should be, be regarded as personal, at least so far as concerns the Succession of Gallart, we do not see that such succession was duly made a party in the court below and, therefore, that court did not acquire jurisdiction over such succession. It seems to us that personal service was necessary.

On the other hand, the court considered the case entirely on its merits and we agree with its conclusions. The parties so submitted the case and judgment was rendered in favor of the defendants. Under these circumstances defendants

Rubert Brothers have a right to insist on their judgment. Any doubt as to whether the Succession of Gallart was or was not a necessary party would only militate in favor of the affirmance of the judgment after the case was submitted and a trial on the merits had against them. Indeed the appellants themselves are insisting that the Succession of Gallart was not a party at all in the court below. They treat the case as a trial and a judgment against Rubert Brothers alone.

In any event, if any doubt should arise of the granting or refusal of the motion to dismiss, we prefer to resolve such doubt by deciding the case on its merits, especially as such action leads to an affirmance of the judgment and we are not convinced that the Succession of Gallart was a necessary party for the principal relief sought in the action of the complainants.

The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.